## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| _____ ) | |
| BROTHERHOOD OF LOCOMOTIVE ) | Case No.: _____ |
| ENGINEERS AND TRAINMEN, ) | |
| 7061 East Pleasant Valley Road ) | |
| Independence, Ohio 44131, ) | Hon. _____ |
| ) | |
| Plaintiff, ) | (Jury Trial Demanded) |
| ) | |
| v. ) | |
| ) | |
| UNION PACIFIC RAILROAD ) | |
| COMPANY, ) | |
| 1400 Douglas St. ) | |
| Omaha NE, 68179, ) | |
| Defendant. ) | |
| _____) | |

## PLAINTIFF'S VERIFIED COMPLAINT
## FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF,
## DECLARATORY RELIEF AND DAMAGES

Plaintiff Brotherhood of Engineers and Trainmen ("BLET," "Union," or "Plaintiff"), a division of the Rail Conference of the International Brotherhood of Teamsters ("IBT"), for its verified complaint against Defendant Union Pacific Railroad Company ("UP," or "Rail Carrier" or "Defendant") hereby states:

## JURISDICTION AND VENUE

1. This is an action brought, *inter alia,* pursuant to the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, (hereinafter "the RLA" or "the Act"). This Court has subject matter jurisdiction as follows: (a) under 28 U.S.C. § 1331 because the case arises under the laws of the United States, namely, the RLA; (b) under

28 U.S.C. § 1337 because the matter in controversy arises under an Act of Congress regulating commerce, namely, the RLA; and (c) under 28 U.S.C. §§ 2201 and 2202 because this is an actual controversy in which the Plaintiff seeks declaratory judgment.

2. The immediate injunctive relief sought by this action is necessary to stop the Defendant's unlawful actions to undermine the Union and the engineers and trainmen it represents in collective bargaining with UP. Specifically, UP has overtly and unabashedly retaliated against BLET union officials in violation of Sections 2, Third and Fourth of the RLA, 45 U.S.C. §§ 152, Third and Fourth, which prohibit "interference…influence or coerc[ion]" in employees' choice to form, join or support a union. Because of anti-union animus, UP has taken out of service from employment with UP five union officials from the Union's Local Division in El Paso, Texas, essentially obliterating the local union's ability to represent its members. UP has indefinitely suspended BLET Division 192 Local Chairman Peter Shepard, who also is Division 192's delegate to the Union's General Committee; President David Butler; Secretary-Treasurer John Moye; Third Vice Local Chairman Joe Reyes; and First Vice Local Chairman and Alternate Trustee Kevin Seale. UP also indefinitely suspended Joe Telehany, who is an engineer at UP but holds no Union office.  The patently pretextual reason given for this action is that there was a fight among Union members at a Division union meeting completely off duty and off company property. UP had no basis

2

whatsoever to inject itself in off-duty union affairs, let alone to indefinitely suspend all BLET Division 192 local union officials without pay for failing to report what happened at the off-duty union meeting. Said unilaterally promulgated obligation to report alleged off-duty misconduct at union meetings flies in the face of the Union's duty of fair representation, which requires that the Union refrain from harming the interests of its members. The Defendant has taken these unlawful actions for the purpose of destroying the Union's ability to function as the certified collective bargaining representative of the crafts or classes of locomotive engineers and trainmen under the RLA. It is therefore patently cognizable in this Court. *See Brotherhood of Ry. Trainmen v. Central of Ga. Ry.,* 305 F.2d 605, 608–09 (5th Cir. 1962); *Brotherhood of Ry. Carmen. v. Atchison, Topeka & Santa Fe,* 847 F.2d 403 (5th Cir. 1990), footnote 10.

3. Venue under 28 U.S.C. § 1391(b)(2) and (3) is proper, and personal jurisdiction over Defendant exists in this District wherein Defendant is located, where a substantial part of the events or omissions giving rise to the claims occurred, where the unlawful disciplinary action took place, where labor relations policy is promulgated, where the Rail Carrier and most witnesses are found, and where the Rail Carrier regularly conducts business operations and has substantial contacts.

## THE PARTIES

4. Plaintiff BLET is the oldest rail union in North America. It is a division of the Rail Conference of the IBT. The BLET represents Locomotive Engineers, Conductors, Brakemen, Firemen, Switchmen, Hostlers, and other Engine Service and Train Service Employees on numerous railroads in the United States. The BLET's total membership is nearly 57,000 and growing. Over 6,800 BLET members work for UP under a labor agreement with BLET, more than 150 of whom work in El Paso, Texas. As such, BLET is a labor organization and is the exclusive bargaining "representative," as defined by Section 1, Sixth of the RLA, 45 U.S.C. § 151, Sixth, of the crafts or classes of locomotive engineers and trainmen employed by Defendant UP. The BLET is headquartered at 7061 East Pleasant Valley Road, Independence, Ohio 44131.

5. Local unions of the BLET are known as Divisions. Each Division elects five primary local officers: President, Vice President, Local Chairman, Secretary-Treasurer and Legislative Representative, each serving three-year terms. The BLET is comprised of more than 470 Divisions. All the Local Chairmen on a particular railroad constitute the BLET General Committee of Adjustment on that system; this General Committee is autonomous and responsible for negotiating, making, interpreting, and enforcing contracts between engineers and their railroad. Larger railroad systems may have more than one General Committee and General Chairman.

6. BLET Division 192 is a BLET local division and labor organization headquartered in El Paso, Texas. The General Committee has delegated to BLET Division 192 the exclusive responsibility of providing day-to-day representation to the BLET-represented employees working for Defendant. Currently, among the BLET Division 192 union officials are: 1) Peter Shepard, Local Chairman, 2) David Butler, President; 3) John Moye, Secretary-Treasurer; 4) Joe Reyes, Third Vice Local Chairman; and 5) Kevin Seale, First Vice Local Chairman and Alternate Trustee. Union member Joe Telehany is an engineer at UP but holds no Union office.

7.   Defendant UP is a freight-hauling railroad that operates 8,300 locomotives over 32,200 miles (51,800 km) or routes in 23 U.S. states west of Chicago and New Orleans. It is the second largest railroad in the United States. As such, Defendant UP is a rail "carrier" within the meaning of the RLA, 45 U.S.C. § 151, First. It employs over 6,800 BLET members under labor agreements with BLET, more than 150 of whom work in El Paso, Texas. UP does substantial business in this District via rail freight and related operations.

8.   This action is brought by the Plaintiff BLET in its own behalf and on behalf and in the interest of all employees in the craft or class in the service of Defendants which BLET represents.

## THE FACTS

9.   A central feature of federal labor law is that the employer has no legitimate or lawful interest in the internal affairs of the union with which it has a labor agreement. Thus, typically the issue of how the union conducts its affairs is not a proper subject for bargaining.

10.  Moreover, in like vein the employer is prohibited from spying on union activities such as those occurring at the union hall or on a private union website. *See, Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 882 (9th Cir. 2002).

11.  While union members regularly clash at union meetings over work-related issues, UP has never before claimed that it had any right to dictate what occurred at those meetings or how BLET officials are to represent its members.

12.  Notwithstanding, on or about the second week of May 2021, UP indefinitely suspended BLET Division 192 Local Chairman Peter Shepard; President David Butler; Secretary-Treasurer John Moye; Vice Local Chairman Joe Reyes; Trustee Kevin Seale; and union member Joe Telehany, who is an engineer at UP but holds no Union office.

13.  Each of these men were issued a Notice of Investigation by UP charging them with failing to report a fight that allegedly had occurred on March 9, 2021 at a restaurant parking lot where the Union meeting was being held by BLET Division 192.

14. Only two union officials, BLET Division 192 Local Chairman Peter Shepard and Vice Local Chairman Joe Reyes, were claimed to have been involved in the physical altercation in the parking lot with union member David Cisneros. The rest of the persons indefinitely suspended were bystanders.

15. Nonetheless, UP has charged all these men with failing to intervene in the fight and failing to report the incident at the Union meeting to UP management.

16. For instance, with respect to BLET Division 192 President David Butler, who was only a bystander, the UP Notice of Investigation charges him as follows:

Subject: NOTICE OF INVESTIGATION

Dear David Butler:

Please report to Holiday Inn El Paso West, 900 Sunland Park Dr El Paso, TX at 10:00 hours on 05/20/2021 for the hearing to develop the facts and determine your responsibility, if any, in connection with the below charge.

On 03/09/2021, at the location of El Paso, TX, at approximately 08:45 hours, while employed as a [sic] ENGINEER, you allegedly engaged in and/or supported a physical attack against another employee. You witnessed the physical attack and further failed to take any action and/or report the incident. The alleged physical attack appeared to further be in retaliation for this employee's decision to accept certain types of service permitted under the collective bargaining agreement. Carrier management learned of these events through a report to RMCC on 5/5/21. These actions undermine

the Carrier's ability to maintain a harassment-free workplace and to manage its working forces as permitted by the collective bargaining agreement and applicable law. In addition, these actions have led to lost work hours and interfere with the Carrier's ability to serve customers. This is a possible violation of the following rule(s): This is a possible violation of the following rule(s) and/or policy:

1.6: Conduct - Careless
1.6: Conduct - Discourteous 1.6:
Conduct - Dishonest

Under the MAPS Policy, this violation is a Dismissal event. Based upon your current status, if you are found to be in violation of this alleged charge, Dismissal may result. …

17.  The notices of investigation charging the other above-mentioned

Union members are substantially similar.

18.  UP Work Rule 1.6, which is cited in each notice of investigation

as the basis for the charges, provides in pertinent part:

**1.6: Conduct**

Employees must not be:

1.  Careless of the safety of themselves or others
2.  Negligent
3.  Insubordinate
4.  Dishonest
5.  Immoral
6.  Quarrelsome
    or
7.  Discourteous

Any act of hostility, misconduct, or willful disregard or negligence affecting the interest of the company or its employees is cause for dismissal and must be

reported. Indifference to duty or the performance of
duty will not be tolerated.

19.  UP has never applied this unilaterally promulgated rule to off-
duty conduct at union meetings, even though activities at off-duty union
meetings may "affect" the company; however, it is patently unlawful for the
employer to try to regulate such meetings and thereby undermine the
effectiveness of private, protected union activity.

20.  In addition, Messrs. Reyes' and Shepard's Notices of Investigation
allege a violation of Item 10-I: Union Pacific Railroad Policies – Policy to
Address Violence & Abusive Behavior in the Workplace – Dismissal, as they
were purportedly involved in the altercation with Mr. Cisneros. However,
UP's "Policy to Address Violent and Abusive Behavior in the Workplace"
does not apply to off-duty conduct. It provides in pertinent part:

> The Company will not tolerate or condone any form
> of violence or threats of violence committed by or
> against its employees, contractors, customer/clients,
> vendors, suppliers, or visitors in the course of
> conducting business, while on Company property,
> traveling on Company business, or when using the
> Company's computer network, systems or
> equipment. …

21.  There is also no language in the labor agreement between the
parties authorizing UP to take such action against Union members for their
off-duty conduct at Union meetings.

22.  While UP has taken Messrs. Shepard and Reyes out of service for
allegedly participating in a fight with Mr. David Cisneros at the off-duty

union meeting, it has refrained from taking Mr. Cisneros out of service. This is unprecedented at UP, as it always takes both participants in a fight out of service. This unequal treatment underscores UP's anti-union animus against the above-mentioned charged union members.

23. As alleged by UP in the charges, it perceives that Mr. Cisneros was disputing the local division's alleged requests that he not take extra work offered by the Company known as "shoves." UP believes that this pro-company position by Mr. Cisneros must be supported and that the local division leadership must be punished by this bogus, retaliatory disciplinary action for simply advising members like Mr. Cisneros not to take such work. This type of retaliation for representation activities in opposition to company interests is prohibited by the RLA under Sections 2, Third and 2, Fourth. *See Brotherhood of Ry. Trainmen v. Central of Ga. Ry, supra* (retaliation against union leader for advising members to refrain from settling claims with rail carrier states a claim for violation of RLA under Sections 2, Third and 2, Fourth).

24. The Union has extensive internal Union disciplinary rules and hearing procedures to rectify any Union member misconduct, all of which are off limits to employer involvement, and all of which provide an adequate remedy for claimed violence between Union members occurring at Union meetings.

25. The local police in El Paso have been contacted and are investigating the incident, obviating any bona fide need for the employer to inject itself into off-duty Union affairs.

26. UP's actions here to inject itself into Union affairs and discipline Union officials for an off-duty altercation at a union meeting are designed to undermine the Union, as these charged union officers are not on property any longer as employees and cannot represent members on a day-to-day basis, leaving UP to its own unchallenged designs to breach the agreement and violate the rights of Union members.

27. The Union has tried to convince UP to refrain from such unlawful conduct by presenting security camera footage to UP showing that the allegations it has made that Mr. Reyes and Shepard were aggressors in the off-duty altercation and that the rest of the charged members were involved in supporting the altercation are false, but UP has not relented in its unlawful actions.

28. UP's actions to hold hearings against these members and question individuals about what transpired at the Union meeting in El Paso are simply attempts to engage in unlawful surveillance of Union activity. *See Konop v. Hawaiian Airlines, supra; Guess?, Inc.*, 339 NLRB 432 (2003) (applying similar principles under the National Labor Relations Act). Further, UP's actions to secure Union member communications discussing

11

Union business likewise constitutes unlawful surveillance of Union activity that threatens to unlawfully quell such activity.

29.     Based upon all of these allegations in the Verified Complaint, Plaintiff is likely to succeed on the merits because its allegations are well pled and supported in law.

30.     Plaintiff will suffer irreparable harm without an injunction because the collective and individual rights of UP Union members are threatened with permanent harm and this will continue without any injunction.

31.     There is no adequate remedy at law because Plaintiff's injuries cannot be remedied with a damages award.

32.     The harm that the Plaintiff will suffer without the injunction is greater than the harm that preliminary relief would inflict on the Defendant because the relief sought merely requires Defendant to refrain from violating federal labor law.

33.     An injunction is in the public interest because the public has a strong interest in vindicating the RLA's public policy permitting employees to organize, choose their own representatives and bargain collectively free from interference, influence, or coercion by carriers; hence, the interests of the public are aligned with Plaintiff herein.

34.     There are no public officers charged with the duty to protect the Union who can furnish adequate protection.

35.     No prior application has been made to this or any other court for the relief requested herein.

36.     Plaintiff has made every reasonable effort to resolve this dispute to no avail.

37.     The unlawful actions of UP will continue to unlawfully undermine the representation of the Union without immediate relief.

## CAUSES OF ACTION

### COUNT I

### (Violation of Section 2, Third of the RLA)

38. The allegations of paragraphs 1 through 37 of the Verified Complaint are hereby incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

39. Section 2, Third of the RLA, 45 U.S.C. § 152, Third provides:

> Representatives for the purposes of this chapter, shall be designated by the respective parties without interference, influence or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with influence, or coerce the other in its choice of representatives.

40. By suspending and retaliating against Local Chairman Peter Shepard, President David Butler, Secretary-Treasurer John Moye, Third Vice Local Chairman Joe Reyes, First Vice Local Chairman and Alternate Trustee Kevin Seale, and Member Joe Telehany for engaging in protected

Union-related activity Defendant interfered with, influenced and/or coerced UP engineers in the exercise of their right to designate representatives of their choosing and the right of the Union and its members to freely participate in protected activity under the RLA.

41.  By surveilling or otherwise creating the impression that it is surveilling the activities of Union members, Defendant interfered with, influenced and/or coerced UP engineers in the exercise of their right to designate representative of their choosing and the right of the Union and its members to freely participate in protected activity under the RLA.

42.  The actions of the Defendant referenced herein were motivated by anti-union animus and taken for the purpose of impairing the ability of the Union and its members to function and freely associate, as well as to destroy support for the Union, to weaken the BLET and ultimately to destroy it.

## COUNT II

### (Violation of Section 2, Fourth of the RLA)

43.  The allegations of paragraphs 1 through 42 of the Verified Complaint are hereby incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

44.  Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth provides:

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing . . . No carrier, its officers, or agents shall deny or in any way question the right of its

14

employees to join, organize, or assist in organizing the labor organization of their choice and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier . . . to influence or coerce employees in an effort to induce them . . . not to join or remain members of any labor organization.

45. By surveilling or otherwise creating the impression that they were surveilling the activities of Union members, Defendant has interfered and continues to interfere with the rights of employees to organize and bargain collectively, has interfered and continues to interfere with the organization of its employees, has used and continues to use the funds of the rail carrier in an effort to induce the members of the Union not to join or remain members of the Union, and has interfered and continues to interfere with the right of Union members to freely participate in protected activity under the RLA.

46. The actions of Defendant referenced herein were motivated by anti-union animus and taken for the purpose of impairing the ability of the Union and its members to function and freely associate, to destroy support for the Union, to weaken the Union and to ultimately destroy it.

47. By engaging in said actions, Defendant violated Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth.

## **PRAYER FOR RELIEF**

Plaintiff requests judgment against Defendant on each claim in the Verified Complaint and for the following relief:

A. That the Court grant immediate, preliminary injunctive relief enjoining Defendant and its agents, employees, representatives, and successors and predecessors in interest from:

   1. engaging in surveillance of the Union and its members;

   2. unlawfully interfering with the Union in its representational capacities, including without limitation disciplining members of the Union and Union leadership for their involvement or support for the Union and its interests, objectives and/or concerted protected activities;

   3. unlawfully interfering with, influencing, and/or coercing UP employees represented by the BLET and its representatives.

B. That the Court award the affected BLET Division members, including Local Chairman Peter Shepard, President David Butler, Secretary-Treasurer John Moye, Third Vice Local Chairman Joe Reyes, First Vice Local Chairman and Alternate Trustee Kevin Seale, and Member Joe Telehany immediate reinstatement to work in their former positions of employment and all actual and compensatory damages arising from their unlawful suspensions and/or disciplines, including but not limited to all lost pay and benefits:

C. That the Court order Defendant to destroy all wrongfully obtained communications and refrain from any use of said communications;

D. That the Court issue a declaratory judgment that the Defendant's conduct in taking adverse action against said Union members was in violation of Section 2, Third Fourth of the Railway Labor Act, 45 U.S.C. §§ 152, Third and Fourth;

E. That the Court order Defendant to conspicuously post copies of this Court's order at Defendants' headquarters, national rail yard operations at locations used by UP BLET crew for a period of one-hundred eighty (180) days: and

F. That the Court award damages and monetary relief as follows:

1. Damages in an amount to be determined at trial in the form of Plaintiff's actual and non-economic damages under 18 U.S.C. § 2707; and

2. Punitive and exemplary damages in an amount to be determined at trial, to serve as punishment and deterrent in light of Defendant's wrongful acts committed with oppression fraud, and malice under 18 U.S.C. § 2707; and

3. Plaintiff's attorney's fees pursuant to 18 U.S.C. § 2707;

4. Plaintiff's costs; and

5. Plaintiff's pre-judgment and post-judgment interest.

Dated: May 28, 2021                    Respectfully submitted,


                                       /s/ *James Petroff*
                                       James Petroff (Ohio 42476)
                                       Joshua D. McInerney (Ohio 84355)
                                       BARKAN MEIZLISH, LLP
                                       4200 Regent Street, Suite 210
                                       Columbus, Ohio 43219
                                       Ph: (614) 221-4221
                                       Fax: (614) 744-2300
                                       jpetroff@barkanmeizlish.com
                                       jmcinerney@barkanmeizlish.com

                                       *(Applications for Admission pending)*

                                       Rod Tanner
                                       Tanner and Associates, PC
                                       6300 Ridglea Place, Suite 407
                                       Fort Worth, Texas 76116-5706
                                       Ph: 817.377.8833
                                       Fax: 817.377.1136
                                       rtanner@rodtannerlaw.com

                                       *Counsel for Plaintiff Brotherhood of Locomotive Engineers and Trainmen*

## **VERIFICATION**

I, BLET Union Pacific-Western Lines General Chairman Brian Carr, pursuant to 28 U.S.C § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the allegations of the foregoing Verified Complaint are true and correct and that I can testify as such based upon personal knowledge in court.

Dated: May 28, 2021

Brian Carr, General Chairman