## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, | : : | Case No. 3:21-cv-00122 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNION PACIFIC RAILROAD COMPANY, | : : | |
| | : | |
| Defendant. | : | |

### DEFENDANT'S MOTION FOR STAY OF INJUNCTION
### PENDING APPEAL WITH INCORPORATED POINTS AND AUTHORITIES

Pursuant to Fed.R.App.P. 8(a)(1)(A), Defendant Union Pacific Railroad Company ("Union Pacific") moves for a stay of the temporary and preliminary injunction issued on June 11, 2021, pending appeal.  In support of its motion Union Pacific states as follows:

A stay pending appeal should be granted when the movant is likely to succeed on the merits and the equities support immediate relief.  *Planned Parenthood v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013).  The Fifth Circuit Court of Appeals has identified four factors in deciding whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 410 (*quoting Nken v. Holder*, 556 U.S. 418, 425-26 (2009) and *Hilton v. Braunskill*, 481 U.S. 770 (1987)).

The June 11, 2021 injunction readily satisfies those factors, as the Court had no subject matter jurisdiction over the instant dispute.  The dispute, which involves a disciplinary matter involving union railroad workers, is a classic "minor dispute" under the Railway Labor Act, 45 U.S.C. 151 ("RLA").  The Court's exercise of jurisdiction over this minor dispute is contrary to

multiple Supreme Court and Circuit Court decisions, and is exceedingly unlikely to survive appeal. And, in the meantime, the Court's Order will cause irreparable damage to Union Pacific's ability to exercise its statutory and contractual rights to investigate alleged misconduct by its employees which, in turn, involved alleged threats and physical violence against a Union Pacific employee in retaliation for that employee's decision to accept certain work assignments from Union Pacific. No party to this proceeding will be substantially injured by the grant of a stay.  Moreover, granting a stay will serve the public interest as it will allow Union Pacific to follow the collectively bargained and statutory dispute resolution procedures required for employee disciplinary matters.

## I.   <u>STATEMENT OF FACTS AND PROCEDURAL HISTORY</u>

The evidence presented at the June 10, 2021 hearing established the following facts:

On May 5, 2021, a Union Pacific employee, David Cisneros, filed an internal "hot line" complaint with Union Pacific.  Mr. Cisneros reported that he was threatened and later physically assaulted by other Union Pacific employees in retaliation for the fact that Mr. Cisneros had accepted certain voluntary work assignments, known as "shoves." In response to Mr. Cisneros' complaint, his supervisor, Michael Shindo, interviewed and took statements from Mr. Cisneros and other Union Pacific employees.

Mr. Cisneros and the employees who allegedly threatened and assaulted him are locomotive engineers represented by the Brotherhood of Locomotive Engineers and Trainmen ("BLET" or "Union").  BLET represents Union Pacific's locomotive engineers on a system-wide basis.  BLET represents over 5,000 Union Pacific Engineers, through six separate General Committees of Adjustment.  The General Committees of Adjustment negotiate collective bargaining agreements with Union Pacific.  The General Committees of Adjustment all have multiple locals or "divisions" that have their own local union officers.  In all, there are more than 1,000 BLET local union officers representing Union Pacific locomotive engineers.  The local

unions do not negotiate collective bargaining agreements. Rather, the local unions represent employees in discipline matters and file time claims or "grievances."

Union Pacific and BLET are parties to a system-wide Discipline Rule. The Discipline Rule provides procedural protections for employees accused of disciplinary offenses. Under the Discipline Rule, before Union Pacific assesses discipline against an engineer, Union Pacific must give the employee written notice of the charges against him/her and hold a formal investigation. After the formal investigation is held, a transcript of the proceeding is prepared and Union Pacific decides whether discipline should be imposed. After Union Pacific issues its decision, the employee can appeal the decision to Union Pacific's Labor Relations department. If it is determined that the employee was wrongfully accused of disciplinary offenses, the employee is entitled to reinstatement (if the employee was held out of service) and full back pay. If the parties are unable to resolve a dispute concerning discipline, the matter is submitted to binding arbitration under the collective bargaining agreement and Section 3 of the RLA. In arbitration, arbitrators have the power to award reinstatement and full or partial back pay if the arbitrator decides that Union Pacific's decision was unjustified.

Based on the allegations made by Mr. Cisneros and the statements taken from other employees, Union Pacific issued notices of investigation to six Union Pacific employees and held them out of service pending disposition of the disciplinary charges. Five of the accused employees hold various local union offices with BLET Division 192 in El Paso, Texas. The sixth accused employee does not hold union office. Another union officer from Division 192, who was on sick leave at the time of the incident was not charged and did not receive a notice of investigation.

On May 28, 2021, BLET filed a complaint in the United States District Court for the Western District of Texas. BLET's complaint purports to state claims under Sections 2 Third and

2 Fourth of the RLA.  BLET's complaint alleged that Union Pacific is "interfering" with BLET's ability to represent its members by holding the charged employees out of service and conducting a formal investigation pursuant to the Discipline Agreement.

Union Pacific filed a motion to dismiss BLET's complaint on June 1, 2021, which remains pending.  In its motion to dismiss, Union Pacific argued, *inter alia*, that the district court lacked subject matter jurisdiction because the instant controversy is a minor dispute under the RLA.

The district court issued a temporary restraining order on June 2, 2021, which was amended on June 7, 2021.  After a two-hour hearing on June 10, 2021, the district court issued the preliminary injunction that is the subject of the instant motion to stay.

## II.   ARGUMENT

### A.   Union Pacific is Highly Likely to Prevail on the Merits Because the Dispute Concerning Discipline of Employees is a Minor Dispute Over Which the District Court Lacks Subject Matter Jurisdiction.

The law governing this case is crystal clear.  The RLA creates two categories of disputes between carriers and the unions representing their employees:  major disputes and minor disputes. Federal courts have no jurisdiction over the merits of either kind of dispute.  Rather, Congress created detailed, mandatory and exclusive dispute resolution procedures for each type of dispute. The district court's decision to enmesh itself in the merits of the instant minor dispute is contrary to overwhelming judicial authority.

Disputes over the formation of a CBA, or over efforts to change the terms of a CBA, are classified as "major disputes."  Major disputes "concern 'the formation of collective agreements or efforts to secure them … They look to acquisition of rights for the future, not to assertion of rights claimed to have vested in the past."  *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 435 (5th Cir. 2021) (*quoting Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945)).  Such disputes are subject to "a lengthy and involved dispute resolution process during which the parties are obligated

to maintain the status quo." *Consolidated Rail Corp. v. Railway Labor Execs.' Assn.*, 491 U.S. 299, 302-303 (1989) ("*Conrail*"); *see also* 45 U.S.C. §§ 152, Seventh, 155 and 156.  There is no question that this case does not involve a major dispute under the RLA.

A minor dispute, by contrast, "contemplates the existence of a collective agreement already concluded" and "the dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case."  *Conrail*, 491 U.S. at 303 (*quoting Burley*, 325 U.S. at 723); *Wright*, 990 F.3d at 435; *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 782-83 (5th Cir. 2012) ("A minor dispute concerns grievances or the interpretation or application covering rates of pay, rules, or working conditions") (quoting *Mitchell v. Cont'l Airlines, Inc.*, 481 F.3d 225, 230-31 (5th Cir. 2007)).  Section 3 of the RLA created the National Railroad Adjustment Board ("NRAB") and assigned the four Divisions of the NRAB exclusive jurisdiction over minor disputes involving specific crafts or classes of employees.  45 U.S.C. § 153, First (h).  Disputes between railroads and the labor organizations representing "train and yard service employees," including locomotive engineers, are assigned to the First Division of the NRAB.  45 U.S.C. § 153, First (h).[1]

The NRAB (or PLB or SBA) "has exclusive jurisdiction over minor disputes."  *Conrail*, 491 U.S. at 304; *Wright*, 990 F.3d at 435; *Ballew*, 668 F.3d at 783 ("the RLA requires minor disputes that cannot be settled through internal grievance procedures to be resolved through a mandatory, exclusive, and comprehensive resolution process before a claims adjustment board establish by the employees' union and the employer through the CBA").  The Supreme Court has

---

[1] Section 3, Second of the RLA allows railroads and labor organizations to establish arbitration panels known as "Public Law Boards" ("PLBs") or "Special Boards of Adjustment" ("SBAs") to decide disputes which are "otherwise referable" to the NRAB.  45 U.S.C. § 153, Second; *Conrail*, 491 U.S. at 303.  Arbitration awards issued by the NRAB (or a PLB or SBA) are "final and binding" on the parties.  45 U.S.C. §§ 153, First (m) and Second.

emphasized that "***Congress considered it essential to keep these so-called "minor" disputes within the Adjustment Board and out of the courts.***" *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978) (emphasis added).

It is well-established that "controversies involving disciplinary matters are 'minor disputes' within the exclusive jurisdiction of the Adjustment Boards." *Nat'l R.R. Passenger Corp. v. Int'l Ass'n of Machinists & Aerospace Workers*, 915 F.2d 43, 50 (1st Cir. 1990) ("*Amtrak v. IAM*"); *Thacker v. St. Louis Southwestern Ry. Co.*, 257 F.3d 922, 924 (8th Cir. 2001)("the propriety of the disciplinary hearing is a minor dispute subject to arbitration under the RLA").   As the Court explained in *National R.R. Passenger Corp. v. American Fed. of R.R. Police*, 613 F.Supp. 602, 606 (D.D.C. 1985), "Disciplinary proceedings … are governed by the collective bargaining agreement in accord with the Railway Labor Act.  The method by which to institute such proceedings, to bring an investigation, and the rights of appeal are governed by the agreement. Accordingly, there is no question but that this dispute is minor."

These principles apply with equal force when the employees who are subject to a disciplinary investigation are union officers and claim that the charges against them are retaliatory or otherwise interfere with their status as a union representative.  *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805 (2d Cir. 2009) ("*UTU v. Amtrak*"); *Amtrak v. IAM*, 915 F.2d at 50; *see also International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700, 712 (3d Cir. 1982) ("*IAM v. Northwest*")(holding that "dispute involving the disciplinary actions taken by Northwest [against several union officers] are 'minor' disputes without the jurisdiction of the federal district courts"); *Ass'n of Flight Attendants v. Horizon Air Indust., Inc.*, 280 F.3d 901 (9th Cir. 2002); *Ferguson v. Norfolk Southern Corp.*, 704 F. Supp. 666, 669 (W.D. Va. 1987).

In *UTU v. Amtrak*, the Second Circuit explained that, for purposes of Section 2 Third, "the term 'representative' refers to the *union* or other *organization* designated to represent an employee, and not merely to an individual official within that organization." *UTU v. Amtrak*, 588 F.3d at 812 (italics in original).  Moreover, it is well-established that Section 2 Third (and Section 2 Fourth) of the RLA primarily address "**precertification** rights and freedoms of **unorganized employees**." *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 440 (1989) ("*TWA*") (emphasis supplied); *see also Johnson v. Express One Int'l, Inc.*, 944 F.2d 247, 252 (5th Cir. 1991); *UTU v. Amtrak*, 588 F.3d at 812-813; *Int'l Bhd. of Teamsters v. United Parcel Serv. Co.*, 447 F.3d 491, 501 (6th Cir. 2006); *Air Line Pilots Ass'n, Int'l v. Guiliford Transp. Indus., Inc.*, 399 F.3d 89, 103 (1st Cir. 2005); *Ass'n of Flight Attendants v. Horizon Air Indus., Inc.*, 280 F.3d 901, 905 (9th Cir. 2002); *Bhd. of Locomotive Eng'rs v. Kan. City S. Ry. Co.*, 26 F.3d 787, 795 (8th Cir. 1994); *Dempsey v. Atchison, Topeka & Santa Fe Ry. Co.*, 16 F.3d 832, 841 (7th Cir. 1994); *IAM v. Northwest*, 673 F.2d at 707.

The Fifth Circuit has explained that a federal court should only exercise jurisdiction over an alleged violation of Sections 2 Third and 2 Fourth in "circumstances where the employer's conduct has been motivated by 'anti-union animus,' where there is 'discrimination or coercion against the representative,' or where 'acts of intimidation cannot be remedied by administrative means.'" *Ass'n of Professional Flight Attendants v. American Airlines, Inc.*, 843 F.2d 209, 211 (5th Cir. 1988) (quoting *Independent Union of Flight Attendants v Pan American World Airways*, 789 F.2d 139, 142 (2d Cir. 1986)).

This well-established precedent compels the conclusion that the Court lacked jurisdiction over BLET's claims in this case.  There can be no dispute that the disciplinary proceedings instituted against the individual employees in this case are governed by the system-wide

"Discipline Rule" negotiated by Union Pacific and BLET (Union Pacific Ex. 1).  Thus, any dispute about the propriety of the disciplinary charges against those employees can and must be resolved through the collectively bargained investigation and appeal process which culminates in final and binding arbitration pursuant to Section 3 of the RLA.  45 U.S.C. § 153.

Moreover, the evidence presented at the June 10 hearing utterly failed to demonstrate that Union Pacific's pursuit of the disciplinary charges at issue in this case presented the "exceptional circumstance" of a railroad seeking to weaken or destroy a union.  The investigation involves only a limited number of local BLET officers from a single local division representing approximately 150 engineers in El Paso.  BLET's status as representative of the remaining 5000-plus engineers on the rest of the Union Pacific system throughout the western half of the United States is utterly unaffected by Union Pacific's decision to pursue disciplinary investigations involving the six employees at issue in this case.   And, the evidence presented at the hearing conclusively demonstrated that BLET's claim that Union Pacific was somehow trying to "surveil" or gather information regarding a union meeting was simply false.  The only connection to a union meeting was that the assault on Mr. Cisneros took place in the parking lot of a restaurant *before* a union meeting.  It is undisputed that the meeting took place as scheduled afterwards.

Furthermore, the evidence presented at the hearing established that Union Pacific's decision to conduct an investigation was driven by substantial, credible information that the charged employees were involved in the assault of a co-worker in retaliation for his decision to accept work assignments from Union Pacific. Union Pacific is not attempting to coerce its employees' representative, the BLET, towards some end in bargaining or otherwise.  It merely is pursuing disciplinary charges in the ordinary course and, as the courts have uniformly recognized,

union officers are not afforded a cloak of immunity for misconduct.  Moreover, there was not a shred of evidence presented to show that Union Pacific acted out of anti-union animus.

Finally, any potential harm from discipline of the local BLET officers is exactly the sort of harm routinely remedied through administrative means.  BLET's witnesses admitted that there are multiple steps in the collectively bargained discipline process at which the charged employees could be exonerated and made whole for any time lost, culminating in arbitration pursuant to the RLA.  The Court had no jurisdiction to intervene in and pretermit that process.

**B.  Union Pacific Will be Irreparably Harmed Absent a Stay.**

The harm caused by the injunction is clear and irreparable.  In this case, Union Pacific was presented with credible evidence that one of its employees was threatened with death and assaulted because he accepted a voluntary assignment.  It is hard to imagine a more fundamental attack on an employer's right to operate its business than to allow co-workers to threaten the lives of and then attack employees who cooperate with the employer's requests.  The Court's Order makes no effort to protect Union Pacific's business or the right of its employees to perform their work without fear of physical retribution.

Moreover, the Court's injunction in this case tears the fabric of the RLA's mandatory dispute resolution process.  Under the RLA and the parties' collectively-bargained Discipline Rule, disputes concerning the facts relating to discipline are resolved through a formal investigation process followed by appeals, and ultimately binding arbitration.  The Court's decision flies in the face of the Congressional mandate, reiterated by the Supreme Court and decades of Circuit Court precedent, that disputes about the propriety of discipline or other contractual interpretation matters must be resolved exclusively through the RLA's minor dispute resolution processes, and not in the federal courts.

### C.     Issuance of a Stay Will Not Substantially Injure Other Parties to the Proceeding.

Issuance of a stay will not injure any party to this proceeding.  On the contrary, enforcement of the statutory and collectively-bargained dispute resolution procedures will protect the peaceful dispute resolution procedures created by Congress and the parties themselves.

BLET's claim that Union Pacific is somehow undermining the union is preposterous. BLET has represented Union Pacific's engineers for over a century and currently represents over 5,000 engineers with a small army of International officials, six General Committees of Adjustment and hundreds of local officials.  The suggestion that Union Pacific is somehow undermining the BLET by investigating disciplinary charges against five local union officers (and one employee who holds no union office) should be dismissed out of hand.

### D.     The Public Interest Strongly Favors a Stay

At issue in this case is an employer's right to investigate threats of violence and an actual assault against an employee in direct retaliation for that employee's activity in the workplace. With seemingly unending reports of workplace violence in the media, it should be undeniable that an employer has the right, and perhaps a duty, to investigate threats made against its employees by other employees.

On the other side of the ledger, there is, quite simply, nothing to weigh.  If, as BLET contends, the charges against the six employees involved in this case are not supported by the facts, those employees will be exonerated through the collectively bargained discipline process or in arbitration under Section 3 of the RLA.  As the Supreme Court recognized in *Sheehan*, the public interest favors stability in the labor-management dispute resolution processes and keeping such disputes in front of specialized industry arbitrators and out of the federal courts.  *Sheehan,* 439 U.S. at 94.

Respectfully submitted,

RINCON LAW GROUP, P.C.
1014 N. Mesa, Suite 200
El Paso, Texas  79902
(915) 532-6800 (Telephone)
(915) 532-6808 (Facsimile)

/s/ *Oscar A. Lara*
CARLOS RINCON
State Bar No. 16932700
CRincon@rinconlawgroup.com
OSCAR A. LARA
State Bar No. 24078827
OLara@rinconlawgroup.com

and

ROBERT S. HAWKINS (*pro hac vice*)
ANDREW J. ROLFES (*pro hac vice*)
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA   19103
(215) 665-2015 (phone)
(215) 717-9535 (fax)
rhawkins@cozen.com
arolfes@cozen.com

Counsel for Defendant
Union Pacific Railroad Company

## CERTIFICATE OF SERVICE

I certify a true and correct copy of the foregoing document was served via electronic service on all parties through their respective counsels of record on this 15th day of June, 2021.

 /s/ Oscar A. Lara
Oscar A. Lara

11