IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

|  |  |  |
|---|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, | ) ) ) ) | Hon. David Briones |
| Plaintiff, | ) ) | Mag. Judge Schydlower |
| v. | ) ) | Civil Action No. 3:21-cv-00122-DB-LS |
| UNION PACIFIC RAILROAD COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR A STAY (ECF DOC. 36)**

**INTRODUCTION**

Plaintiff Brotherhood of Engineers and Trainmen ("BLET," "Union," or "Plaintiff"), a division of the Rail Conference of the International Brotherhood of Teamsters, submits the following memorandum of law in opposition to the motion to stay the preliminary injunction by Defendant Union Pacific Railroad Company ("UP," or "Carrier" or "Defendant")(ECF. Doc. 36). Defendant argues that 1) these facts constitute a "minor dispute" over which the Court has no "jurisdiction," 2) UP will be harmed absent a stay, 3) no party will be harmed by a stay, and 4) the public interest strongly favors a stay. As this Court has repeatedly held in this case, Defendant's arguments are meritless. The Court must deny the motion to stay based upon the following arguments.

## ARGUMENT

Federal Rule of Civil Procedure 62(d) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction." In determining whether to grant a stay pending appeal, courts consider four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably harmed absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *See Amawi v. Pflugerville Independent School District,* 2019 WL 2029074, at *1 (W.D. Tex. 2019), *citing Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott,* 734 F.3d 406, 410 (5th Cir. 2013). "A stay is not a matter of right," however, "even if irreparable injury might otherwise result." *Nken v. Holder,* 556 U.S. 418, 433 (2009) (quoting *Virginian R. Co. v. U.S.,* 272 U.S. 658, 672 (1926)). Rather, the decision to grant a stay pending appeal is "an exercise of judicial discretion," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Amawi*, at *1.

As there is substantial overlap between the four factors courts must consider in determining whether to stay an action and the four factors governing preliminary injunctions, *id.* (*citing Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 24 (2008)), to the extent a defendant merely repeats arguments the Court has already considered and rejected, it has failed to meet its burden of showing that the Court

2

should exercise its discretion to issue a stay. *Id.; see also Kahara Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 264 F. Supp. 2d 484, 487 (S.D. Tex. 2002) (rejecting motion to stay raising the same arguments considered and rejected in determining that a preliminary injunction was warranted).

Here, Defendant is simply rehashing the arguments made in its prior briefing on the motion for a TRO and in its opening statement at the evidentiary hearing, all of which have been rejected by the Court. Defendant's premature motion for a stay does not even cite to the transcript, and for that reason alone should be rejected by the Court. Nevertheless, Plaintiff will address each of Defendant's arguments again, all of which are meritless.

### A. Defendant's Argument that it is "Highly Likely" It Will Prevail on the Merits that This Is a Minor Dispute Lacks Merit

Once again, Defendant argues that this case merely presents a "minor dispute" for arbitration, over which this Court has no "subject matter jurisdiction."[1] (ECF. Doc. 36, page 1). It claims that this is just a garden-variety, workplace violence discipline case that should run its course under the CBA because it had no intent to destroy the Union. This Court has rejected this assertion repeatedly and nothing at the

---

[1] While many courts have regrettably used this type of overbroad language regarding minor disputes under the RLA, the question does not really go to the power of the Court to entertain the case, as there is a myriad of ways federal court concededly exercise jurisdiction even as to minor disputes, such as granting injunctions to preserve the jurisdiction of the arbitration board or, in cases like this, where there an attack on the union itself as a representative. It is probably more accurate to say the arbitration board has primary jurisdiction over minor disputes, and exclusive jurisdiction to interpret the labor agreement.

3

evidentiary hearing changes those conclusions. In fact, the actual evidence laid bare the illegal motivations of Defendant to retaliate against the Union and quell its opposition to the Carrier.

First, while Defendant admits that even post-certification a court "should" exercise jurisdiction over an alleged violation of Sections 2, Third and 2, Fourth in "circumstances where the employer's conduct has been motivated by anti-union animus,' where there is 'discrimination or coercion against the representative, or where acts of intimidation cannot be remedied by administrative means." (ECF Doc. 36, page 7) *citing Ass'n of Professional Flight Attendants v. American Airlines, Inc.*, 843 F.2d 209, 211 (5th Cir. 1988), Defendant completely ignores the controlling case here: *Bhd. of Ry. Trainmen v. Central of Georgia Ry.,* 305 F.2d 605, 609 (5th Cir.1962)("*Central of Georgia Ry.*").

In 1990, the Fifth Circuit in *Bhd. of Ry. Carmen v. Atchison, Topeka & Santa Fe Ry.*, 894 F.2d 1463 (5th Cir. 1990), cert. denied, 498 U.S. 846 (1990), *c*ited with approval in its footnote 10 *Central of Georgia Ry.* for the proposition that if a rail carrier's motivation is to weaken or destroy the representative, then such a claim is cognizable in federal court, notwithstanding that it may also present a minor dispute.

Indeed, such a post-certification retaliation against the union, *i.e.,* a "representation" claim, as opposed to merely an individual's claim, was precisely found on the facts of the complaint in *Central of Georgia Ry., supra.* Those facts are astonishingly parallel to those here. There, the railroad terminated a union official who was advising members not to settle their claims against the railroad. The

4

railroad claimed that this official was "disloyal" to the railroad and subjected it to more lawsuits. But the Fifth Circuit rejected those hollow excuses and found that this type of retaliation against the "representative" itself was cognizable in federal court under RLA Sections 2, Third and Fourth.

*Central of Georgia Ry., supra,* is binding authority and is squarely on all fours with the facts in the present case. Here, UP is simply disciplining all Union officials for advising members not to take extra work, using the Union meeting fight as a transparent excuse to take every Union official out of service. Query: If the Carrier asserts that all these men who were present had an obligation to report the off-premises fight under its work Rule 1.6, why has it only taken such position against Union officials and not every single person at the Union meeting that witnessed the altercation as well? This is patently discriminatory, as evidenced by its failure to suspend Mr. Cisneros or Mr. Barnett, who were both present at the altercation.

Moreover, in every other case in which employees were accused of fighting at work, UP has taken both "sides" involved in the fight out of service. (Tr. 49). Here, however, in unprecedented fashion, UP has chosen to exempt Mr. David Cisneros from such disciplinary action, quite obviously because he was *fighting for a pro-carrier position regarding extra work* and opposing the actions of BLET Division 192. The only credible testimony in the case is from Messrs. David Butler and Kevin Seale, who said Mr. Cisneros was the aggressor. (Tr. 19, 41). Indeed, the Court recognized on the record that Mr. Cisneros was not credible. (Tr. 109). Indeed, his demeanor gave the impression that he was laying it on thick and "acting" in his responses.

It is also noteworthy that while UP claims that it is simply conducting an "investigation" by issuing notices of investigation to all the Union leaders, this is misleading. That "notice of investigation" is a euphemism for suspending them without pay pending the Carrier deciding whether it will fire them. It is a disciplinary action to be sure. It can take years to get your job back (Tr. 27, line 21).

There is not a shred of evidence that UP contacted any of the Union officials or Mr. Telehany to ask them for statements for anything. In other words, it just suspended them without any questions asked of them, and just relied upon Mr. Cisneros' incredible account and statement of his pro-carrier supporters. Plainly, UP issued these disciplinary actions to punish and weaken the Union.

On this score, the Court should note that UP asserts that this was not action to weaken or undermine the Union because BLET has many local divisions around the country and this is just one of them; yet, the Company has not cited a single case that supports this proposition. Again, this is yet another straw man argument from Defendant. It was made in the opening statement by UP. (Tr. 62). And it was rejected by the Court. The Union does not have to prove that UP destroyed the national Union. In other words, it does not get a license to take all the local division leadership out of commission illegally just because there are many other local divisions. Its illegal acts here are enjoinable nonetheless.

Such patent retaliation is transparently designed to quell the Union's activities by taking all these men away from their day-to-day union advocacy in the workplace. To be sure, it is no answer that employees can select another representative. *See*

6

*Central of Georgia Ry., supra,* footnote 7. By analogy, under the National Labor Relations Act § 10(j), 29 U.S.C.A. § 160(j), the Court readily enjoins efforts to undermine the Union. *See Overstreet v. El Paso Disposal, L.P.*, 668 F. Supp.2d 988 (W.D. Tex. 2009) (Briones, J.).

Moreover, Defendant has not set forth any argument that its surveillance of the Union's affairs by virtue of collecting information about the internal Union communications and the Union meeting on March 9, 2021, is insufficient to state a claim under Sections 2, Third and 2, Fourth. It has thus waived any such challenge. The unlawful surveillance conducted by UP is not a minor dispute either. *See Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 883 (9th Cir. 2002) (holding that claims by a pilot alleging that his employer-carrier obtained unauthorized access to a website he maintained and suspended him for comments posted on the website which were critical of the employer and the incumbent union gave rise to a major dispute).

Defendant's arguments only rehash its previously rejected arguments with no citation to the record. Its arguments are meritless in any event. The Court should reject them again.

### B. Defendant's Argument that It will Be Irreparably Harmed Absent a Stay Lacks Merit

Next, Defendant argues that absent a stay it will be harmed because it cannot protect workers from violence. This is again a rehash of UP's past arguments and predicated on the erroneous assertion that it had a legitimate reason for suspending all the Union leaders present. It did not. It did not provide a shred of evidence to

7

support its claim, except for the obviously incredible testimony of Mr. Cisneros, who said that he was so "scared" that Mr. Reyes and Mr. Shepard threatened to kill him, (Tr. 71), except that he showed up one half-hour early to the Union meeting, listening to music in his truck and getting charged up prior to attacking Mr. Reyes and knocking him out cold not once, but twice! So much for being afraid. UP does not have a prerogative to retaliate against Union officials. Nor does it have a right to have the Court abandon enforcement of serious statutory violations of the RLA simply because there are arbitration provisions in the labor agreement. The Court should reject UP's unsupported arguments once again.

### C. *Defendant's Argument that No Other Party Will Be Harmed If the Stay Is Granted Is False*

Here, UP ignores the fact that it has suspended almost every single BLET Local Division 192 leader and they are without pay absent the injunction. The members have lost the representation of these men as they are barred from coming on the premises to work on their jobs or even to represent Union members. It has completely undermined the local Union. The Court must reject UP's arguments, as if this is "no harm, no foul" if all local Union leaders are taken out of commission. Imagine if UP's entire management team were taken out of service, barred from the premises and it had no one to conduct operations. Most certainly, UP has harmed the Union and the injunction prevents that illegal act.

### D. Defendant's Argument that the Public Interest Strongly Favors a Stay Is False

Defendant's reiteration of its claim that this was simply an instance of "workplace violence" that it was only "investigating" is false and has been rejected by the Court. Rather, this is a case of unlawful retaliation and surveillance of internal Union affairs. UP has chosen to violate the RLA and attack the Union for its opposition to its scheduling practices, suspending the entire Union leadership from service for an indefinite time. As the Fifth Circuit held in Central *of Georgia Ry.*, *supra* at 609, if a rail carrier's motivation is to weaken or destroy the representative through the imposition of improper discipline, "the public interest, if nothing else, would make injunctive relief appropriate if not compelled."

Thus, the Court should reject Defendant's arguments, which are against the public interest.

## CONCLUSION

For the reasons stated above, Defendant has set forth no basis for a stay and the Court should deny Defendant's motion for one.

Dated: June 22, 2021                    Respectfully submitted,

/s/ *James Petroff*
James Petroff (Ohio 42476)
Joshua D. McInerney (Ohio 84355)
BARKAN MEIZLISH, LLP
4200 Regent Street, Suite 210
Columbus, Ohio 43219
Ph: (614) 221-4221

Fax: (614) 744-2300
jpetroff@barkanmeizlish.com
jmcinerney@barkanmeizlish.com

*(Pro Hac Vice)*

Rod Tanner
Tanner and Associates, PC
6300 Ridglea Place, Suite 407
Fort Worth, Texas 76116-5706
Ph: 817.377.8833
Fax: 817.377.1136
rtanner@rodtannerlaw.com

*Counsel for Plaintiff Brotherhood of Locomotive Engineers and Trainmen*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document with all attachments was filed this 22nd of June, 2021, via the Court's ECF system and will be served on all parties by Court email.

/s/ *James Petroff*
James Petroff
